ATTORNEY FOR APPELLANT
Stephen Gerald Gray
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
Steve Carter
Attorney General of Indiana

Christopher L. Lafuse
Deputy Attorney General
Indianapolis, Indiana

# In the
# Indiana Supreme Court

No. 29S04-0602-CR-58

SARAH SELLMER,

*Appellant (Defendant below)*,

v.

STATE OF INDIANA,

*Appellee (Plaintiff below)*.

Appeal from the Hamilton Superior Court, No. 29D04-0111-CF-07259
The Honorable J. Richard Campbell, Judge

On Petition to Transfer from the Indiana Court of Appeals, No. 29A04-0303-CR-147

**February 16, 2006**

**Sullivan, Justice.**

Defendant Sarah Sellmer appeals her conviction for Possession of Marijuana Over Thirty Grams. Sellmer's arrest and conviction followed a chain of events triggered by an anonymous tip to the police that there was marijuana in her automobile and her subsequent consent to the search of the car. The anonymous tip did not provide the police with the reasonably articulated suspicion of criminal activity required by the Fourth Amendment to detain her. While the police were entitled to approach her and ask her if she was

willing to answer questions, the police procedures used here were such that her consent to search the car was not valid.

## Background

At approximately 5:00 p.m. on November 19, 2001, Noblesville police received a call from an anonymous informant, describing the make and color of an automobile the caller alleged contained a large amount of drugs: a silver Dodge parked backwards into a parking spot in front of a Supercuts Hair Salon located at 2610 Conner Street in Noblesville.

Acting on this tip, the Noblesville police dispatched officers Wade Roberts and Mike Freibel to the Supercuts to investigate further. At the scene, Officer Roberts saw a vehicle that matched the vehicle described in the anonymous tip. As he drove his police cruiser by the vehicle, he observed two women exit the car and enter the Supercuts.

Officers Roberts and Freibel entered the Supercuts where Officer Roberts spotted Defendant Sarah Sellmer, the driver of the silver Dodge, in the customer waiting area. He asked her whether she owned the silver Dodge and when she answered affirmatively, he asked her to step outside. Once outside, Officer Roberts and Sellmer engaged in a conversation that will be described in greater detail later in this opinion. At the end of this conversation, Sellmer gave Officer Roberts permission to search the vehicle. On the basis of this permission (but without a warrant), Officer Roberts conducted a search and discovered a large quantity of marijuana. Sellmer was arrested and charged with Possession of Marijuana Over Thirty Grams.

Before going to trial on this charge, Sellmer filed a motion to suppress the evidence gathered during the search of her car on May 29, 2002. She argued that the Noblesville police detained her and searched her vehicle in violation of the Fourth and Fifth Amendments to the United States Constitution and Article I, Section 11, of the Indiana Constitution. The trial court denied this motion on August 15, 2002, after a hearing and

2

subsequently tried Sellmer, who was found guilty on January 23, 2003.

The Court of Appeals upheld the trial court's denial of Sellmer's motion to suppress in Sellmer v. State, 800 N.E.2d 671 (Ind. Ct. App. 2003). We grant transfer and vacate the decision of the Court of Appeals.

## Discussion

Sellmer appeals the trial court's denial of her motion to suppress the marijuana found in her automobile when Officer Roberts performed a warrantless search of her vehicle. She contends that the search of her automobile, seizure of the drugs, and use of the drugs as evidence against her in court violated her right under the Fourth Amendment to the U.S. Constitution and Article I, Section 11 of the Indiana Constitution "to be secure . . . against unreasonable searches and seizures. . . ." U.S. Const. amend. IV; Ind. Const. art. 1 § 11. Part I of this Discussion focuses on issues surrounding the anonymous tip; Part II, on issues surrounding the permission Sellmer gave to Officer Roberts to search the car.

## I

A citizen's constitutional rights are not violated by an investigatory stop conducted by a police officer where the officer has a reasonably articulable suspicion of criminal activity. See Terry v. Ohio, 392 U.S. 1, 20 (1968). The United States Supreme Court has conceded that the concept of reasonable suspicion "is somewhat abstract," prompting the Court to "avoid[ ] reducing it to 'a neat set of legal rules.'" U.S. v. Arvizu, 534 U.S. 266, 274 (2002) (citations omitted). Nevertheless, the Supreme Court has directed reviewing courts to "make reasonable suspicion determinations by look[ing] at the 'totality of the circumstances' of each case to see whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing." State v. Bulington, 802 N.E.2d 435, 438 (Ind. 2004) (quoting Arvisu, 534 U.S. at 273). Reviewing courts

have also been directed to "review trial court determinations of reasonable suspicion de novo. . . ." Id.

Despite its reluctance to promulgate any bright line rules with respect to reasonable suspicion inquiries, the Supreme Court has held as a general matter that "an anonymous tip alone is not likely to constitute the reasonable suspicion necessary for a valid Terry stop." Lampkins v. State, 682 N.E.2d 1268, 1271 (Ind. 1997) (citing Alabama v. White, 496 U.S. 325, 329-30 (1990)). Indeed, precedent dictates that for an anonymous tip to constitute the reasonable suspicion necessary for a valid investigatory stop, at least two conditions must be met. First, "significant aspects of the tip [must be] corroborated by the police." Id. at 1271. Such corroboration requires that an anonymous tip give the police something more than details regarding facts easily obtainable by the general public to verify its credibility. See Johnson v. State, 659 N.E.2d 116, 119 (Ind. 1995) (holding that an anonymous tip that provided only information easily obtainable by members of the general public was insufficiently reliable to constitute reasonable suspicion to conduct an investigatory stop). Second, an anonymous tip, if it is to be considered reliable enough to constitute reasonable suspicion to conduct an investigatory stop, must also demonstrate an intimate familiarity with the suspect's affairs and be able to predict future behavior. See Id. at 118.[1]

Protection against uncorroborated anonymous tips is necessary because "[i]f any anonymous caller's allegation, uncorroborated by anything beyond public knowledge, could justify a search, every citizen's home [and car for that matter] would be fair game for a variety of innocent and not so innocent intrusions." Jaggers v. State, 687 N.E.2d 180, 183 (Ind. 1997). We therefore review the anonymous tip that led to Sellmer's arrest

---

[1] See also State v. Stickle, 792 N.E.2d 51, 55 (Ind. Ct. App. 2003) trans. denied, 804 N.E.2d 754 (Ind. 2003) (concluding that "[a]n anonymous tip is not sufficient to permit police to detain a citizen and subject him or her to an investigatory stop absent independent indicia of reliability or officer-observed confirmation of the anonymous informant's prediction of the suspect's future behavior"); Berry v. State, 766 N.E.2d 805, 810 (Ind. Ct. App. 2002) trans. denied, 783 N.E.2d 691 (Ind. 2002) (holding that an anonymous caller who failed to provide any predictions of suspect's future behavior that would prove they had inside knowledge of suspect's affairs lacked sufficient indicia of reliability); Washington v. State, 740 N.E.2d 1241, 1246 (Ind. Ct. App. 2000) trans. denied, 753 N.E.2d 7 (Ind. 2001) (determining that an anonymous tip that lacked detailed predictions of suspect's future behavior or other indicia of reliability could not be the basis of a constitutional investigative stop).

and conviction under the "totality of the circumstances" so as to determine whether that tip conformed to the principles outlined above, and provided Officer Roberts with sufficient indicia of reliability to justify his questioning of Sellmer.

The tip received by the Noblesville police and acted upon by Officer Roberts does not meet the standard already outlined. The anonymous tip provided to the Noblesville police with information detailing the color, make, and whereabouts of a vehicle but failed to provide the Noblesville police with any of the following important pieces of information: the identity of the car's driver, a description of the car's driver, the car's license plate number, the basis of the caller's knowledge, or any information detailing the future acts of the car's driver that would demonstrate the caller's intimate knowledge of the suspect's activities and provide "officers the tools with which to verify its dependability." Johnson, 659 N.E.2d at 119.

The anonymous tip in this case provided the police with no information that was not already easily knowable by a member of the general public. While it gave the Noblesville police enough information to identify Sellmer's car, it lacked any information that would allow the police to corroborate the caller's claim that illegal activity was afoot. See Florida v. J.L., 529 U.S. 266, 272 (2000) (stating that reasonable suspicion "requires that a tip be reliable in its assertion of illegality, not just in its tendency to identify a determinate person"). Nor did the tip provide the Noblesville police any information regarding Sellmer's future acts that would bolster its reliability. The anonymous tip, by itself and without further police corroboration, was not sufficiently detailed in predicting Sellmer's future actions to justify searching her car.

**II**

While the anonymous tip did not provide the reasonable suspicion for the Noblesville police to justify the "seizure" of Sellmer under Terry, our colleagues on the Court of Appeals quite accurately point out that "a person is not seized within the meaning of the

5

Fourth Amendment by police officers merely approaching an individual in a public place and asking if the person is willing to answer questions." Sellmer, 800 N.E.2d at 675 (citing Florida v. Royer, 460 U.S. 491 (1983)). As such, Sellmer's constitutional rights do not appear to have been violated by Officer Roberts approaching Sellmer in the Supercuts or requesting that she step outside to answer questions.

But what are we to make of Sellmer giving Officer Roberts permission to conduct a (warrantless) search of the vehicle? Here another aspect of search and seizure law, often referred to as "Pirtle rights," is implicated.

The Fourth Amendment requires the police to obtain a search warrant from a neutral, detached magistrate prior to undertaking a search of either a person or private property, except under special circumstances fitting within "certain carefully drawn and well-delineated exceptions." Katz v. United States, 389 U.S. 347, 357 (1967). One such exception to the warrant requirement occurs when consent is given to the search. Id.

Indiana law on consent given while in custody derives from Pirtle v. State, 323 N.E.2d 634 (Ind. 1975). The defendant in that case was under arrest for possession of a stolen automobile. The police read Miranda rights to him in the squad car and again at the police station. Pirtle did not waive his rights either time and requested to speak to an attorney when questioned at the station. Though counsel was not provided, approximately 12 hours later two other officers questioned Pirtle again and one asked for permission to search his apartment, which he authorized. The police searched the apartment and discovered witnesses and direct evidence linking Pirtle to a homicide.

Pirtle challenged admission of that evidence, and we held that "a person who is asked to give consent to search while in police custody is entitled to the presence and advice of counsel prior to making the decision whether to give such consent." Id. at 640. Because Pirtle was not afforded counsel after he requested it, he "could have no conception of the extent of his Fourth Amendment rights." Id. Sims v. State, 413 N.E.2d 556, 559 (Ind. 1980), made clear that Pirtle requires that a person in custody be informed of

6

the right to consult with counsel about the possibility of consenting to a search before a valid consent can be given.

Officer Roberts did not advise Sellmer of any right to consult with counsel when he sought her permission to search the vehicle. Tr. at 52.[2] Because Sellmer claims she was entitled to receive a Pirtle warning about consultation with counsel before consenting to the search of her car, we must determine whether her right to receive the warning had attached. This right can only be said to have attached if Sellmer was in custody when he consented to the search. See Jones v. State, 655 N.E.2d 49, 55 (Ind. 1995).

We determine whether a person is "in custody" by applying an objective test asking whether a reasonable person under the same circumstances would believe that she was under arrest or not free to resist the entreaties of the police. Florida v. Bostick, 501 U.S. 429, 434, (1991); Jones, 655 N.E.2d at 55 & n.4 (observing that "Justice O'Connor aptly pointed out in Bostick [that] the objective test is that of a reasonable innocent person").

So was Sellmer "in custody" when she gave Officer Roberts permission to search her vehicle? Would a reasonable person under the same circumstances believe that she was under arrest or not free to resist the entreaties of the police? The Jones case just cited is the most relevant precedent.

In Jones, South Bend police had received a tip from a confidential informant that Jones was carrying crack cocaine in the gas cap compartment of his car. Jones's car was identified shortly thereafter and was followed by several police cars. When Jones stopped in the middle of the street to let out a passenger, Captain Fautz stopped Jones to cite him for obstructing traffic. While Fautz asked to see Jones's license and registration, the other officers pulled up and exited their cars. Fautz asked Jones if he could search Jones's car. Jones consented. Fautz told Jones that he did not have to let him search,

---

[2] The trial court held a hearing on Sellmer's motion to suppress on August 6, 2002. The transcript of the suppression hearing is referred to as "Tr."

"that he had the right to refuse," but Jones reaffirmed, saying, "Go ahead." Jones, 655 N.E.2d at 53. Fautz then obtained a "permit to search form" from his car, walked back to where Jones was standing, gave him a copy, and began to read it aloud to him. As he did so, another officer opened the gas cap compartment and discovered baggies of crack cocaine. Id. at 52-53.

We rejected Jones's claim that his Pirtle rights had been violated based on the following analysis:

> Jones was not in custody when he consented to the search of his vehicle. . . . Jones was neither arrested nor in police custody during the initial traffic stop. Although the number of officers present for a traffic stop was unusually high, none of the officers touched Jones or physically restrained his freedom of movement before the moment he consented to a search of his car, and Jones was not asked incriminating questions. Jones was never in the care and control of the police or interrogated in a manner implicating the Fifth Amendment and necessitating the giving of Miranda warnings. . . .
>
> Had Jones refused to give the police permission to search, he would have been given two citations and been free to leave. The police had no right even "to frisk" the vehicle without Jones' consent, and they would have had no option but to cease detaining him. Thus, we conclude that at the moment Jones was asked for permission to search his car, the prosecutorial process had not yet begun against him and Pirtle and Sims rights had not attached.
>
> Because Jones' consent to search was not constitutionally defective, the seizure of the cocaine was proper.

Id. at 56.

Under the Florida v. Bostick formula cited supra, a reasonable person under the same circumstances as those in which Jones found himself would believe both that he was not under arrest and that he was free to resist the entreaties of the police. Although certain of the circumstances in Jones are also present here in Sellmer's case, under the

8

totality of the circumstances inquiry applicable here, we conclude that a reasonable person under the same circumstances as those in which Sellmer found herself would believe either that she was under arrest or, at least, that she was not free to resist the entreaties of the police.

First, in Jones, the defendant consented to the search immediately upon Captain Fautz's request and then reaffirmed the consent upon Captain Fautz advising him that he had the right to refuse. Id. at 53. In contrast, Officer Roberts recounts that he asked Sellmer for permission to search her car between three and five times before securing her consent. We think that a reasonable person, asked the same question over and over and over again, might well conclude that she was not free to give the police a negative answer.

Second, in Jones, the police did not ask the defendant any incriminating questions. In this case, if Officer Roberts did not, he came extremely close. See Tr. at 43 (Officer Roberts "was needing to speak with her and it was in reference to a phone conversation which was received by our dispatcher and that there was a large amount of illegal drugs in it. And then [he] asked her directly at that point in time if she knew anything about that."); Id. at 44 ("Do you know of any drugs that might be in your vehicle? Are there any drugs in this car? Do you know of any drugs that might be in the car or why our dispatcher would have received this call?"). We think that a reasonable person, asked repeatedly if he or she knew why the police had received a report of a large quantity of contraband in his or her car, might well conclude either that he or she was under arrest or, at least, that she was not free to deny police permission to search her car.

Third, during Officer Roberts's efforts to convince Sellmer to give him permission to search her car, one of the things he told her was that "It's in your best interest to cooperate with us and not make us jump through a bunch of hoops." Id. at 48-49. We think that a reasonable person, told by a police officer that it would be in the person's "best interest" not to require the police to "jump through a bunch of hoops," might well conclude that the consequence of denying the police permission to search her car might

9

be arrest or, at least, detention during whatever time it would take for the police to jump through the hoops.

Fourth, during Officer Roberts's efforts to convince Sellmer to give him permission to search her car, he also stated that "If you have nothing to hide here, and the information we have been given is not true, I'm going to thank you for your time and allow you to go on your way." Id. at 50. We think that a reasonable person, told by a police officer that the person would be "allow[ed] . . . to go on your way" if the person permitted the police to search her car and no contraband was discovered, might well conclude that the person was not free to go until a search was conducted.

Fifth, during Officer Roberts's efforts to convince Sellmer to give him permission to search her car, Sellmer asked Officer Roberts "a lot of questions" about "what her options or what rights she had and what rights [the police] had and everything." Id. at 47. Rather than indicate that Sellmer did not have to let him search and had the right to refuse, Officer Roberts answered, "It's in your best interest to cooperate and not make us jump through a bunch of hoops." Id. at 49. But cf. Jones v. State, 655 N.E.2d 49, 53 (Ind. 1995) (police affirmatively advised defendant that he did not have to consent to the search even though he did not inquire as to his rights). We think that a reasonable person, after asking a police officer about the person's rights and being told that it was in the person's "best interest to cooperate and not make [the police] jump through a bunch of hoops," might well conclude that even if she refused, her car would be searched anyway as soon as the police finished jumping through the hoops.

Sixth, during Officer Roberts's efforts to convince Sellmer to give him permission to search her car, Sellmer asked Officer Roberts, "Do I have to let you [search my car]?" Tr. at 52. Rather than indicate that Sellmer did not have to let him search and had the right to refuse, Officer Roberts again said, "It would be in your best interest to cooperate if you have nothing to hide." Id. at 53. We think that a reasonable person who, after asking a police officer whether the person was required to let the police officer search the person's car and, rather than being told that the person did not, was told that it would be

10

in the person's "best interest" to consent, would conclude that the person had no practical alternative but to consent.

None of these six factors taken alone or, in all likelihood, several of them taken together, is or are sufficient to cause us to conclude that a reasonable person under the same circumstances as those in which Sellmer found herself would believe either that she was under arrest or, at least, that she was not free to resist the entreaties of the police. But we apply a totality of the circumstances test in such situations and, given the extensive efforts that Officer Roberts went to here—again, compare with the procedures followed by the South Bend police in Jones—to persuade Sellmer to consent and to avoid advising her that she was not required to consent even in the face of her direct questions, we conclude that a reasonable person under the same circumstances as those in which Sellmer found herself would believe either that she was under arrest or, at least, that she was not free to resist the entreaties of the police.

As such, she was entitled to a Pirtle advisement, which Officer Roberts acknowledges he did not provide. Tr. at 53. For this reason, we conclude that the trial court should have granted Sellmer's motion to suppress the evidence seized in the search of her car.

**Conclusion**

We grant transfer, thereby vacating the opinion of the Court of Appeals. Ind. Appellate Rule 58(A). We reverse the trial court's denial of Sellmer's motion to suppress the evidence gathered during the search of her automobile and remand this matter to the trial court for further proceedings consistent with this opinion.

Boehm, and Rucker, JJ., concur. Shepard, C.J., dissents with separate opinion in which Dickson, J., joins.

11

**SHEPARD, Chief Justice, dissenting.**

My colleagues have declared that a rather ordinary police inquiry on the sidewalks of Noblesville constituted a violation of the Fourth Amendment. While this declaration rescues Sarah Sellmer from the criminal sanctions that would otherwise flow from her transporting around a large amount of marijuana (this is not a case of someone caught smoking a joint in a dorm room), I am more concerned about its long-term effect.

The majority says in questioning Ms. Sellmer out on the walk in a tony business district the police stepped over six different constitutional lines. One may hope that resting today's decision on six differentiated violations might cabin in the damage done to standard law enforcement inquiries, but I would say that only about three of these six declared violations pack much punch: (1) the officer asked for permission several times, (2) he told her he was there because she was under suspicion, and, my friends say, (3) he told her she could leave only if permission was granted.

As to the first of these, that an officer asks permission multiple times might well be characterized as making it plain to Sellmer that a search could occur only if she agreed. The majority has elected to characterize it instead as a form of coercion.

Second, as for the Court's decision to declare that telling Sellmer she was under suspicion for carrying drugs, an appellate court that elects to treat such statements as a form of pressure must accept that law enforcement officers will reasonably understand that the courts wish them to be less candid with people they interview.

And, third, as for whether Officer Roberts told Sellmer she could depart only if she consented, the treatment my colleagues give to the actual evidence before the trial court reflects a review based on selection of those facts <u>unfavorable</u> to the trial court's ruling. It is not our declared standard of review.

There were three descriptions before the trial court (all from Officer Roberts,

12

none from Sellmer). The majority rests on the proposition that Officer Roberts told Sellmer he would "'allow [her] to go'" once he completed the search. Slip opin. at 10. They say this meant she was restrained or "seized" to use the language of the Constitution.

Whether this is what he told her or not depends on which version of this conversation one chooses to credit. To be sure, one version tends to support the majority's holding. Others do not.

Here are those several versions. At one point, the officer testified:

> And I told her if in fact she allowed me to search the vehicle and I found nothing, I would thank her for her time and appreciate her cooperation and I would allow her to go on her way with, you know, nothing else done. That I would leave and go on my way.

(Tr. at 24.)

The version propounded by the <u>defense</u> was different. During cross-examination, Roberts agreed with defense counsel's assertion that it happened this way:

> "Well, if you have nothing to hide, let me look in your car, and when I found out whether that's true or not true, I'll be on my way and it will be in your best interest to cooperate with me."

(Tr. at 47.) The meaning of this version is at best ambiguous.

Reviewing this evidence and more, Judge Richard Campbell noted that the U.S. Supreme Court had recently observed that the police in a traffic stop need not tell the driver that he is "free to go" before his consent to search will be recognized as voluntary, <u>Ohio v. Robinette</u>, 519 U.S. 33, 38-40, 117 S.Ct. 417, 421 (1996). Judge Campbell held that "most of the objective circumstances indicated that the Defendant was never in the

care and control of the police." (Appellants' App. at 16 – Order on Motion to Suppress.)

The reason today's decision may have substantial implications for future motions to dismiss is that the majority has elected not to credit the testimony the trial judge obviously found most compelling, the testimony embraced by the defense. It chooses instead to order suppression by crediting the version favorable to suppression.

Ironically, the Court relies on the decision in <u>Terry v. Ohio</u>, 392 U.S. 1 (1968). There, Chief Justice Warren spoke for eight members of the Court in holding that an officer who manually seized a suspect (apparently on the basis that the suspect mumbled the answer to a question), and then frisked the suspect's body, was warranted in so doing because the officer had observed the suspect and others walking past department store windows. That was the only evidence supporting the seizure. "It would have been poor police work indeed," said Earl Warren, to do anything else. <u>Id.</u> at 23. That policeman's hunch and some mumbling constituted "articulable suspicion" according to Chief Justice Warren, adequate under the Fourth Amendment. Judge Campbell's ruling is altogether consistent with <u>Terry</u> and should be affirmed.

Dickson, J., joins.

14