

FILED

Aug 17 2017, 7:55 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Elizabeth A. Bellin
Elkhart, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Jodi Kathryn Stein
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Earl D. Hammond,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

August 17, 2017

Court of Appeals Case No.
20A03-1612-CR-2948

Appeal from the Elkhart Superior
Court

The Honorable Charles Carter
Wicks, Judge

Trial Court Cause No.
20D05-1511-CM-1792

**Pyle, Judge.**

# Statement of the Case

Earl D. Hammond ("Hammond") appeals his conviction for Class B misdemeanor possession of marijuana.[1] He argues that the trial court abused its discretion by admitting into evidence the marijuana he possessed because the evidence was obtained pursuant to a warrantless search. He acknowledges that he consented to the search but asserts that his consent was invalid because he was in custody at the time and had not received a *Pirtle* advisement and waived his right to an attorney. Because we find that Hammond was not in police custody when he consented to the search, we conclude that he was not entitled to a *Pirtle* advisement or to an attorney, and, thus, validly consented to the search. Accordingly, the search was constitutional, and the trial court did not abuse its discretion in admitting the marijuana.

We affirm.

# Issue

Whether the trial court abused its discretion in admitting evidence seized pursuant to a warrantless search.

# Facts

On October 14, 2015, Officer Michael Wass ("Officer Wass") and Detective Jeremy Stout ("Detective Stout") with the Elkhart County Sheriff's Department

---

[1] IND. CODE § 35-48-4-11(a)(1). The possession of marijuana statute was amended effective July 1, 2017. However, we will apply the version of the statute in effect when Hammond committed his offense.

were driving in Elkhart when the car in front of them drove, by "almost a whole—half vehicle," over the double yellow lines separating the lanes. (Tr. Vol. 2 at 136). The vehicle then drove left of the center lines two more times, prompting Officer Wass to initiate a traffic stop. The vehicle pulled over, and Officer Wass approached the driver's side while Detective Stout approached the passenger's side. In addition to the driver, there were two passengers sitting in the car, one in the front seat and one in the back seat.

[4] Upon reaching the car, Officer Wass saw that the driver—who was later identified as Chevrolet Schrader ("Schrader")—had "bloodshot and glassy" eyes, "lethargic" speech, and "lethargic" movements. (Tr. Vol. 2 at 139). Officer Wass could also smell an "odor of burnt marijuana coming from inside of the vehicle." (Tr. Vol. 2 at 139). From the passenger's side of the car, Detective Stout observed a strong odor of alcoholic beverages and saw a box of beer in the back seat and several beer cans lying around the car.

[5] Officer Wass asked Schrader to step outside of the car and administered a field sobriety test, which revealed that Schrader was impaired. Schrader then admitted that he had smoked marijuana a few hours previously with the two passengers in the car, his father, Bryan Schrader ("Bryan"), and his uncle, Hammond.

[6] Meanwhile, Detective Stout talked to Bryan and Hammond from the passenger's side of the car. At one point, Hammond rolled down his window to give Detective Stout his ID, and Detective Stout was able to smell "the

strong odor of burnt marijuana coming from the vehicle." (Tr. Vol. 2 at 201). Detective Stout told Bryan that he would be conducting a search of the vehicle for marijuana because of the odor. He asked Bryan if he could search his pockets, and Bryan consented, but Detective Stout did not find anything in Bryan's pockets.

[7] At that point, Detective Stout asked Hammond to exit the vehicle and asked whether there was any marijuana in the car. Hammond responded "no." (Tr. Vol. 2 at 203). Detective Stout then asked Hammond if he could search his pockets for any contraband, and Hammond replied "if you want to." (Tr. Vol. 2 at 203). Before searching, Detective Stout asked Hammond whether he had any weapons, and Hammond responded "marijuana." (Tr. Vol. 2 at 203). When Detective Stout asked where the marijuana was, Hammond tapped his front left pocket. Detective Stout placed Hammond in handcuffs and retrieved a bag of marijuana from the pocket he had identified.

[8] Subsequently, Officer Wass placed Schrader in the police car and returned to assist Detective Stout. He saw the marijuana Detective Stout had found in Hammond's pocket and read Hammond his *Miranda* rights. The officers then searched Schrader's car and discovered various drug paraphernalia, including a rolling paper machine, rolling papers, and a marijuana grinder, in a plastic container under the driver's seat of the car. They also found a burnt marijuana cigarette in a "wrench," a device commonly used to smoke marijuana, in an open container underneath the driver's seat. (Tr. Vol. 3 at 32).

[9] Thereafter, the State charged Hammond with Class B misdemeanor possession of marijuana based on his possession of the marijuana that Detective Stout had found in his pocket. Hammond filed a pre-trial motion to suppress the evidence of the marijuana, arguing that Detective Stout's search had been unconstitutional under both the United States and Indiana constitutions. With respect to the Indiana Constitution, Hammond argued that he had been in custody when Detective Stout asked to search him and, therefore, should have been advised of his right to an attorney as required by *Pirtle v. State*, 323 N.E.2d 634 (Ind. 1975). Because he did not receive a *Pirtle* advisement, he argued that his consent to the search was invalid and the warrantless search was unconstitutional. The trial court held a hearing on the motion to suppress on June 3, 2016, and denied it. In support of its denial, the trial court concluded, in relevant part, that Hammond had not been in custody at the time of the search and, therefore, had not had a right to counsel or to a *Pirtle* advisement when he consented to the search. Therefore, it determined that Hammond's consent had been valid, and the search had been constitutional.

[10] The trial court held a jury trial on October 20, 2016. At trial, the State offered the marijuana into evidence, and the trial court admitted it over Hammond's objection. Hammond then testified and admitted to possessing marijuana when Detective Stout searched him. Specifically, when asked whether he had marijuana on him, he replied, "I had marijuana on me." (Tr. 61). He also admitted, with respect to his demeanor, "I nicely broke the law, I guess." (Tr.

61). At the conclusion of the trial, the jury found Hammond guilty as charged. Hammond now appeals.

# Decision

On appeal, Hammond argues that the trial court abused its discretion by admitting the marijuana from his pocket into evidence because Detective Stout obtained the marijuana pursuant to an unlawful warrantless search. Hammond admits that he consented to the search but contends that this consent was invalid because he did not receive a *Pirtle* advisement of his right to counsel, or waive his right to counsel, prior to consenting to the search. In response, the State asserts that Hammond did not have a constitutional right to a *Pirtle* advisement or to counsel because he was not in police custody when he consented to the search.

Admission of evidence is generally left to the discretion of the trial court, and thus we review admissibility challenges for an abuse of that discretion. *Jacobs v. State*, 76 N.E.3d 846, 849 (Ind. 2017). We will reverse only when admission is clearly against the logic and effect of the facts and circumstances before the court and the error affects the party's substantial rights. *Guilmette v. State*, 14 N.E.3d 38, 40 (Ind. 2014). However, "when an appellant's challenge to such a ruling is predicated on an argument that impugns the constitutionality of the search or seizure of the evidence, it raises a question of law, and we consider that question de novo." *Id.* at 40-41. Generally speaking, evidence obtained pursuant to an unlawful search must be excluded at trial. *Clark v. State*, 994

N.E.2d 252, 266 (Ind. 2013); *see also Sellmer v. State*, 842 N.E.2d 358, 365 (Ind. 2006) (reversing the trial court's denial of a motion to suppress evidence where the defendant had not given valid consent to the search that produced the evidence).

[13] A warrantless search based on lawful consent is consistent with the Indiana Constitution. *Campos v. State*, 885 N.E.2d 590, 600 (Ind. 2008). However, in *Pirtle*, our supreme court established that Article 1, Section 11 of the Indiana Constitution requires that a person in custody must explicitly be advised of and waive the right to counsel before consenting to a search in order to validly consent to the search. *Pirtle*, 323 N.E.2d at 640. The *Pirtle* Court reasoned that "without counsel, [a defendant] could have no conception of his Fourth Amendment rights" even though "his consent to allow a search was critical." *Id.* Notably, the *Pirtle* requirements only apply to a person who is in police custody when he or she consents to a search. *Sellmer*, 842 N.E.2d at 363.

[14] Here, it is undisputed that Detective Stout did not advise Hammond of his right to seek counsel before requesting to search him and that Hammond did not waive his right to counsel. Accordingly, the pivotal issue we must address is whether Hammond was in police custody at the time he consented to the search.

[15] "A person stopped by police, while 'seized' and momentarily not free to go, is ordinarily not considered in custody." *Meriwether v. State*, 984 N.E.2d 1259, 1263 (Ind. Ct. App. 2013). There is no bright line test for determining when an

investigatory detention has moved beyond a non-custodial stop to an arrest or custodial interrogation. *Campos*, 885 N.E.2d at 601. We determine whether a person is "in custody" by applying an objective test asking whether a reasonable person under the same circumstances would believe that they were in custody or free to leave. *Id*. However, as we summarized in *Meriwether*, in determining whether a defendant was in custody:

> Indiana courts have also considered whether the defendant was handcuffed or restrained in any way, whether the police interrogation was vigorous, whether the police implied the defendant was not free to leave or there were adverse consequences for non-compliance, and how long the officer detained the defendant.

*Meriwether*, 984 N.E.2d at 1263. In addition, our supreme court has found it relevant to consider whether the police's interrogation necessitated the giving of *Miranda* warnings. *See Jones v. State*, 655 N.E.2d 49, 56 (Ind. 1995), *reh'g denied.*

[16] In support of his argument that he was in custody when he consented to Detective Stout's search, Hammond cites to our supreme court's opinion in *Sellmer*. There, Noblesville police officers received a tip from an anonymous informant regarding an automobile containing a large amount of drugs. *Sellmer*, 842 N.E.2d at 359. The officers located the car based on the informant's description of the car and its location and asked to talk to the driver, Sellmer. *Id.* at 360. During the subsequent conversation, one of the officers repeatedly asked Sellmer potentially incriminating questions such as "'Do you know of any drugs that might be in your vehicle?' 'Are there any

drugs in this car?' [and] 'Do you know of any drugs that might be in the car or why our dispatcher would have received this call?'" *Id.* at 364. The officer also asked the driver for her consent to search the car multiple times and told her that it was in her "best interest to cooperate with us and not make us jump through a bunch of hoops." *Id.* He also said, "[i]f you have nothing to hide here, and the information we have been given is not true, I'm going to thank you for your time and allow you to go on your way," implying that she was not allowed to "go on [her] way" until the officers completed a search. *Id.* When Sellmer asked about her rights and whether she had to let the officers search her car, the officer did not inform her that she had the right to refuse. *Id.* at 365. Instead, he told her that "[i]t would be in [her] best interest to cooperate if [she] had] nothing to hide." *Id.* After these statements, Sellmer eventually consented to a warrantless search of her car, and the police officers found "a large quantity of marijuana." *Id.* at 359.

[17] On appeal of her conviction for possession of over thirty grams of marijuana, our supreme court concluded that none of those circumstances taken alone "or in all likelihood, several of them taken together" would have been sufficient to cause a reasonable person in Sellmer's circumstances to believe that she was under arrest or not free to resist the entreaties of the police. *Id.* However, under the totality of the circumstances, the officer's "extensive efforts" to persuade Sellmer to consent to a search of her car and to "avoid advising her that she was not required to consent even in the face of her direct questions" were sufficient to make a reasonable person believe that she was under arrest or not free to

resist the entreaties of the police. *Id.* Accordingly, our supreme court found that Sellmer was in custody when she consented to the search of her vehicle and was therefore entitled to a *Pirtle* advisement. *Id.* Because she did not receive such an advisement, her consent to the search was not valid. *Id.*

[18] In this case, we do not believe Detective Stout used any of the persuasive or coercive techniques exhibited in *Sellmer* to imply to Hammond that he was under arrest or not free to resist Detective Stout's request to search him. Hammond claims that he was "not free to leave the situation" or "to go about his business." (Hammond's Br. 12). However, that factor does not distinguish Hammond's situation from a seizure where a person stopped by the police is "momentarily not free to go." *See Meriwether*, 984 N.E.2d at 1263. As we stated above, a seizure is not ordinarily considered a custodial arrest. *See id.*

[19] Likewise, we do not find other factors distinguishing Detective Stout's stop of Hammond from a non-custodial seizure. At the point when Detective Stout questioned Hammond, he had not advised Hammond of his *Miranda* rights or implied that there would be adverse consequences if Hammond refused his request to search his pockets. In addition, while Detective Stout handcuffed Hammond in order to actually perform his search, he had not restrained Hammond in any way when he requested to search him or implied that Hammond would be restrained. It was only when Hammond volunteered the information that he had contraband that Detective Stout handcuffed him.

In light of these factors, we do not find that Hammond was in custody when Detective Stout requested his consent to search him. *See Clarke*, 868 N.E.2d at 1120 (finding that Clarke was not in custody when his encounter with police "involved neither suggestions that he should cooperate, nor the implication of adverse consequences for noncooperation, nor any suggestion that he was not free to go about his business"). Because he was not in custody, he validly gave his consent to the search without a *Pirtle* advisement, and the warrantless search was constitutional. Thus, the trial court did not abuse its discretion when it admitted the marijuana seized pursuant to the search.

Affirmed.

May, J., and Brown, J., concur.