

FILED

Dec 11 2018, 9:22 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Talisha Griffin
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Jesse R. Drum
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Aaron A. Negash,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

December 11, 2018

Court of Appeals Case No.
18A-CR-840

Appeal from the Marion Superior
Court

The Honorable David J. Certo,
Judge

Trial Court Cause No.
49G09-1705-CM-18997

**Pyle, Judge.**

# Statement of the Case

Aaron Negash ("Negash") appeals his convictions, following a bench trial, for Class A misdemeanor carrying a handgun without a license[1] and Class A misdemeanor possession of a synthetic drug or lookalike substance.[2] Negash argues that: (1) the trial court abused its discretion when it admitted the synthetic marijuana he possessed into evidence because it had been seized pursuant to an illegal search; (2) there was insufficient evidence to support his carrying a handgun without a license conviction; and (3) the trial court erred by ordering Negash to pay probation fees.

We conclude that: (1) the trial court properly admitted the evidence; (2) there was sufficient evidence to support his carrying a handgun without a license conviction; and (3) the trial court did not err in imposing probation fees. However, we remand to the trial court to hold an indigency hearing upon the completion of Negash's sentence.

We affirm and remand with instructions.

# Issues

1. Whether the trial court abused its discretion when it admitted the synthetic marijuana into evidence.

---

[1] IND. CODE § 35-47-2-1.

[2] I.C. § 35-48-4-11.5.

2. Whether there was sufficient evidence to support Negash's carrying a handgun without a license conviction.

3. Whether the trial court abused its discretion by ordering Negash to pay probation fees.

## Facts

[4] On the night of May 22, 2017, police from the Indianapolis Metropolitan Police Department were dispatched to the Living Room Lounge in Indianapolis on a report of shots fired. When Officer Matthew Plummer ("Officer Plummer") and Sergeant Mark Gregory ("Sgt. Gregory") arrived on scene, a suspect was already in custody. They learned that another vehicle was involved in the incident and that a vehicle with three occupants was parked behind the building. Officer Plummer and Sgt. Gregory "walked up and started conversing with the occupants in the vehicle." (Tr. 12).

[5] Negash, who identified himself as "Moses," was seated in the driver's seat of the vehicle.[3] (Tr. 23). There was one front-seat passenger and one back-seat passenger. Officer Plummer spoke with Negash and the back-seat passenger and informed them that he and Sgt. Gregory were investigating a report of shots fired. Officer Plummer asked the occupants whether they "had [] heard anything, [and] [whether] there [were] any weapons in the vehicle[.]" (Tr. 12). The three occupants responded "no." (Tr. 12). While Officer Plummer focused

---

[3] Moses Negash ("Moses") is Negash's brother. During the bench trial, Moses testified that he owned the handgun and vehicle. He further testified that he allowed Negash to use the vehicle that night and left the handgun in his car that day, something he does not normally do.

on Negash and the back-seat passenger, Sgt. Gregory spoke to the front-seat passenger, who was "moving around, reaching for the glovebox, going for his wristband, [and] pulling his shirt up." (Tr. 13). The back-seat passenger did not say anything to Officer Plummer, but he pointed to Negash and made "the outline [of] a gun with his index finger and his thumb." (Tr. 13).

[6] Officer Plummer then asked Negash to step out of the vehicle. As Negash stepped out of the vehicle, Officer Plummer observed "a huge bulge in [Negash's] right pocket, sticking out, protruding." (Tr. 14). Officer Plummer immediately conducted a pat-down of the outer layer of Negash's clothing and felt "a baggie of narcotics." (Tr. 14). During the pat-down, Officer Plummer also "looked down as [he] patted down and [could] see straight into the pocket." (Tr. 15). Based on his experiences as a law enforcement officer, Officer Plummer recognized that the baggie contained synthetic marijuana.[4] Officer Plummer arrested Negash and seized the synthetic marijuana. The police then searched the vehicle and located a handgun in the glovebox. The hammer of the handgun was cocked back and the gun was loaded.

---

[4] In explaining how he was able to identify that the baggie contained synthetic marijuana, Officer Plummer testified as follows:

> Since I've been downtown, synthetic marijuana has plagued the downtown district. I've only been downtown for approximately, a little over two years. I've come into contact with it approximately 100 plus times. I'm familiar with it. I'm familiar with how individuals act while smoking the spice. And then just, it's something I've come across a lot in my investigations downtown.

(Tr. 15-16).

[7] Negash stood at the hood of the police vehicle while Officer Plummer was in the same vehicle trying to verify Negash's identity in the computer system. Sgt. Gregory leaned into Officer Plummer's window and asked, "is someone going to be arrested for the gun?" (Tr. 27). Negash interjected and stated, "I have a permit for that gun. It's in the trunk." (Tr. 27). Officer Plummer went to the trunk but did not find a gun permit.

[8] The State charged Negash with Class A misdemeanor carrying a handgun without a license and Class A misdemeanor possession of a synthetic drug or lookalike substance. A bench trial was held on February 13, 2018. At trial, Officer Plummer and Moses Negash testified to the facts above. When the State introduced the synthetic marijuana into evidence, defense counsel objected and stated the following:

> I do object to State's exhibit 1, Your Honor, and I would call for the baggie and its contents and the testimony around it to be excluded under the application of the exclusionary rule. It's fruit of the poisonous tree from an unlawful search.

> * * *

> When he asked Mr. Negash to step out of the car, it became a detention, and at that time Mr. Negash was not advised of his [P]irtle rights.

> * * *

> It wasn't a gun, and he used further intrusive means of looking into my client's pocket and violated his right to having a warrant for any search or consenting to a search by being read his [P]irtle rights and waiving those rights.

(Tr. 18). The trial court overruled the objection and admitted the synthetic marijuana into evidence. The trial court found Negash guilty of both counts.

[9] Thereafter, the trial court held a sentencing hearing. During this hearing, the trial court ordered Negash to "do [] [three hundred and five] (305) days on probation with the standard conditions and fees." (Tr. 62). Additionally, the sentencing order, under the "Amount/Comment" section of "Part IV Sentencing Conditions[,]" provided, in relevant part, that: Negash would be subject to all "standard conditions and fees" of probation. (App. Vol. II at 13). Further, the sentencing order, under the "Court Costs and Fees" section of "Part V Monetary Obligations[,]" provided, in relevant part, that Negash was obligated to pay: a $50.00 adult probation administrative fees; a $281.30 adult probation month and initial user fee; and a $8.70 probation user fee. (App. Vol. II at 14). The probation order for Negash lists fourteen standard conditions, including "pay all Court-ordered fines, costs, fees and restitution as directed." (App. Vol. II at 15). The special conditions section of the probation order includes that same conditions as in the sentencing order. The trial court imposed a sentence of thirty (30) days in the Marion County Jail, with the remaining three hundred and five (305) days to be served on probation with all the standard conditions and fees for each of the Class A misdemeanor convictions. The trial court ordered both convictions to run concurrently. Negash now appeals.

# Decision

On appeal, Negash argues that: (1) the trial court abused its discretion when it admitted the synthetic marijuana he possessed into evidence because it had been seized pursuant to an illegal search; (2) there was insufficient evidence to support his carrying a handgun without a license conviction; and (3) the trial court erred in imposing probation fees. We will review each argument in turn.

## 1. Admission of Evidence

First, Negash argues that the trial court abused its discretion when it admitted into evidence the synthetic marijuana Officer Plummer had seized. Specifically, he argues that the search that produced the synthetic marijuana was illegal because it violated his rights under the Fourth Amendment to the United States Constitution and Article 1, Section 11 of the Indiana Constitution.

The admission of evidence is generally left to the discretion of the trial court. *Hammond v. State*, 82 N.E.3d 880, 884 (Ind. Ct. App. 2017). We review admissibility challenges for an abuse of that discretion and will reverse only when the admission of evidence is clearly against the logic and effect of the facts and circumstances before the court and the error affects the party's substantial rights. *Id.* "'[W]hen an appellant's challenge to such a ruling is predicated on an argument that impugns the constitutionality of the search or seizure of evidence, it raises a question of law, and we consider that question de novo.'" *Id.* (quoting *Guilmette v. State*, 14 N.E.3d 38, 40-41 (Ind. 2014)). Generally

speaking, evidence obtained pursuant to an unlawful search must be excluded at trial. *Clark v. State*, 994 N.E.2d 252, 266 (Ind. 2013).

## A. United States Constitution

The Fourth Amendment to the United States Constitution provides that citizens have the right to be "secure in their persons, houses, papers, and effects, against unreasonable searches and seizures[.]" U.S. CONST. amend. IV. We begin by noting that there are three levels of police investigation, two of which implicate the Fourth Amendment and one of which does not. *Overstreet v. State*, 724 N.E.2d 661, 663 (Ind. Ct. App. 2000), *reh'g denied*, *trans denied*. First, the Fourth Amendment requires that an arrest or detention that lasts for more than a short period of time must be justified by probable cause. *Id*. Second, the police may, without a warrant or probable cause, briefly detain an individual for investigatory purposes if, based upon specific and articulable facts, the officer has a reasonable suspicion that criminal activity has or is about to occur. *Id*. The third level of investigation occurs when a police officer makes a casual and brief inquiry of a citizen, which involves neither an arrest nor a stop. *Id*. This third level is a consensual encounter in which the Fourth Amendment is not implicated. *Id*. The Fourth Amendment is not triggered unless an encounter between a law enforcement officer and a citizen loses its consensual nature. *Id*.

A law enforcement officer's approach to a vehicle parked in a public place does not itself implicate the Fourth Amendment. *Powell v. State*, 912 N.E.2d 853,

861 (Ind. Ct. App. 2009). While the individual remains free to leave, the encounter is consensual and there has been no violation of the individual's Fourth Amendment rights. *State v. Calmes*, 894 N.E.2d 199, 202 (Ind. Ct. App. 2008). "Detention turns on an evaluation, under all the circumstances, of whether a reasonable person would feel free to disregard the police and go about his or her business." *Finger v. State*, 799 N.E.2d 528, 532 (Ind. 2003). Examples of circumstances under which a reasonable person would believe he was not free to leave include: (1) the threatening presence of several officers, (2) the display of a weapon by an officer, (3) physical touching of the person, or (4) the use of language or tone of voice indicating that compliance with the officer's request might be compelled. *Overstreet*, 724 N.E.2d at 664.

[15] Here, Negash was seated in a vehicle that was parked behind the Living Room Lounge. The record reveals that Officer Plummer and Sgt. Gregory approached the vehicle on foot. The officers displayed no weapons as they approached Negash's vehicle. Nor did they use any language or speak in a tone of voice which mandated compliance. We cannot say that Officer Plummer's approach to the parked vehicle and initial contact with Negash constituted an investigatory stop or seizure under the Fourth Amendment. Therefore, Officer Plummer did not have to possess reasonable suspicion of wrong doing in order to approach the vehicle to ask Negash and other occupants their purpose for being in the area. *See Overstreet*, 724 N.E.2d at 664 (holding that an interaction between an officer and the defendant was a consensual encounter and thus the

officer was not required to possess reasonable suspicion of wrongdoing to approach the defendant).

[16] Negash argues that Officer Plummer's request for Negash to exit the vehicle and subsequent pat-down of Negash's pocket violated the Fourth Amendment. It is well-settled that an officer may conduct a

> reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime. The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger.

*Wilson v. State*, 745 N.E.2d 789, 792 (Ind. 2001) (quoting *Terry v. Ohio*, 392 U.S. 1, 27 (1968)).[5] After Officer Plummer explained that he was there investigating a report of shots fired and asked Negash and the back-seat passenger if they had heard anything, the back-seat passenger pointed to Negash and made "the outline [of] a gun with his index finger and his thumb." (Tr. 13). Additionally, the front seat passenger acted suspiciously by "moving around, reaching for the glovebox, going for his waistband, [and] pulling his shirt up." (Tr. 13). *See Wyoming v. Houghton*, 526 U.S. 295, 304-05 (1999) (noting that "a car passenger . . . will often be engaged in a common enterprise with the driver, and have the same interest in concealing the fruits or the evidence of their wrongdoing").

---

[5] In *Terry v. Ohio*, the Supreme Court defined a "Terry" frisk as a pat down search that involves a "carefully limited search of the outer clothing of the suspect in an attempt to discover weapons which might be used to assault [an officer]." *Shinault v. State*, 668 N.E.2d 274, 277 (Ind. Ct. App. 1996).

Taken together, we conclude that Officer Plummer had reason to believe that he was dealing with an individual who was likely armed and dangerous, thus supporting his request that Negash step out of the vehicle and the subsequent pat down. As soon as Negash stepped out of the vehicle, Officer Plummer observed "a huge bulge in his right pocket, sticking out, protruding." (Tr. 14). Officer Plummer then conducted a limited search of Negash's outer clothing and felt "a baggie of narcotics," which he could also see inside of Negash's right pocket. (Tr. 14). Because Officer Plummer saw the synthetic marijuana, seizure of the baggie was proper pursuant to the "plain view doctrine." *See Corwin v. State*, 962 N.E.2d 118, 122 (Ind. Ct. App. 2012) (holding that the warrantless seizure of contraband is justified during a *Terry* frisk if the object's identity as contraband is "immediately apparent or instantaneously ascertainable"), *trans. denied*. *See also Hannibal v. State*, 804 N.E.2d 206, 210-11 (Ind. Ct. App. 2004) (concluding that the seizure of marijuana was proper under the plain view doctrine). Therefore, the initial encounter, request for Negash to exit the vehicle, and subsequent pat down did not violate the Fourth Amendment.

**B. Article 1, Section 11 of the Indiana Constitution**

[17] Negash also asserts that Officer Plummer's initial approach towards the vehicle and subsequent pat-down violated Article 1, Section 11 of the Indiana Constitution. Article 1, Section 11, like the Fourth Amendment, prohibits unreasonable searches and seizures. However, the legality of a search under the Indiana Constitution "turns on an evaluation of the reasonableness of the police

conduct under the totality of the circumstances." *Litchfield v. State*, 824 N.E.2d 356, 359 (Ind. 2005). Reasonableness of a search depends on a balance of: (1) the degree of concern, suspicion, or knowledge that a violation has occurred; (2) the degree of intrusion the method of the search or seizure imposes on the citizen's ordinary activities; and (3) the extent of law enforcement needs. *Id.* at 361. "It is the State's burden to show that its intrusion into 'those areas of life that Hoosiers regard as private,' was reasonable under the totality of the circumstances." *Austin v. State*, 997 N.E.2d 1027, 1034 (Ind. 2013) (quoting *State v. Quirk*, 842 N.E.2d 334, 339-40 (Ind. 2006)).

[18] The State argues that Negash has waived this state constitutional claim because he did not object to the admission of evidence on those grounds before the trial court. At trial, Negash objected to the search on the grounds he was not provided with the warnings required under *Pirtle v. State*, 323 N.E.2d 634 (1975), and that the search violated the Fourth Amendment. On appeal, his argument is based on the factors from *Litchfield*. "It is well-settled in Indiana that a defendant may not argue one ground for objection at trial and then raise new grounds on appeal." *Gill v. State*, 730 N.E.2d 709, 711 (Ind. 2000). Accordingly, we agree with the State that Negash has waived his state constitutional claim. *See Redfield v. State*, 78 N.E.3d 1104, 1108 (Ind. Ct. App. 2017) (finding waiver when, "in his arguments to the trial court, Redfield mentioned Article 1, Section 11 but did not provide any independent analysis under that provision of the laws and facts"), *trans. denied*.

[19] Waiver notwithstanding, it is clear that Officer Plummer's initial approach and subsequent pat-down were reasonable under Article 1, Section 11. Specifically, he had a high degree of suspicion that a violation had occurred because he was in the process of investigating a report of shots fired with an alleged suspect still at large; the front-seat passenger was acting suspiciously and making furtive gestures; and the back-seat passenger pointed to Negash and made "the outline [of] a gun with his index finger and his thumb." (Tr. 13). Then, Officer Plummer observed a "huge bulge in [Negash's] right pocket, sticking out, protruding." (Tr. 14). Officer Plummer then patted down the outer layer of Negash's clothing and felt "a baggie of narcotics," and he could see the baggie of synthetic marijuana in Negash's pocket. (Tr. 14).

[20] In addition, the degree of intrusion was slight. The record reveals that the police approached Negash's vehicle on foot and did not impede his movement. Officer Plummer did not display a weapon, show any force, or put his hands on Negash until he had reason to believe that Negash was armed and dangerous. Even then, the degree of intrusion for the initial search was low. *See Robinson v. State*, 5 N.E.3d 362, 368 (Ind. 2014) (describing a *Terry* stop as a "relatively minor" intrusion).

[21] Finally, law enforcement needs were high. The police were investigating a shooting where an alleged suspect was still at large. As detailed above, based on the front-seat passenger's behavior and the backseat passenger's signal that Negash possessed a gun, Officer Plummer needed to conduct a pat down of Negash for weapons for police and public safety.

In light of the above factors, we conclude that Officer Plummer's search was reasonable and did not violate the Indiana Constitution. Because we have also found that the search did not violate the Fourth Amendment, we, thus, also conclude that the trial court did not abuse its discretion in admitting into evidence the synthetic marijuana discovered in Negash's pocket.

## 2. Sufficiency of Evidence

Next, Negash challenges the sufficiency of the evidence for his carrying a handgun without a license conviction. He specifically contends that there is insufficient evidence that he possessed the handgun. Our standard of review for sufficiency of evidence claims is well-settled. We do not assess the credibility of the witnesses or reweigh the evidence in determining whether the evidence is sufficient. *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007). We consider only the probative evidence and reasonable inferences supporting the verdict. *Id*. Reversal is appropriate only when no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. *Id*. Thus, the evidence is not required to overcome every reasonable hypothesis of innocence and is sufficient if an inference may reasonably be drawn from it to support the verdict. *Id*. at 147.

In order to convict Negash of carrying a handgun without a license, the State was required to prove beyond a reasonable doubt that Negash "carr[ied] a handgun in any vehicle or on or about [his] body without being licensed under this chapter to carry a handgun." I.C. § 35-47-2-1. To prove that a defendant

possessed contraband, the State may prove either actual or constructive possession. *Eckrich v. State*, 73 N.E.3d 744, 746 (Ind. Ct. App. 2017), *trans. denied*. Actual possession occurs "when a person has direct physical control over [an] item." *Sargent v. State*, 27 N.E.3d 729, 733 (Ind. 2015). When a person does not have direct physical control over an item, as was the case here, the person may still have constructive possession of the item if he "'has (1) the capability to maintain dominion and control of [it]; and (2) the intent to maintain dominion and control over it.'" *Id.* (quoting *Gray v. State*, 957 N.E.2d 171, 174 (Ind. 2011)). In cases where the accused has exclusive possession of the premises on which the contraband is found, an inference is permitted that he knew of the presence of the contraband and was capable of controlling it. *Harrison v. State*, 32 N.E.3d 240, 248 (Ind. Ct. App. 2015), *trans. denied*. "[W]hen possession of the premises is non-exclusive, th[e] inference is permitted only if some additional circumstances indicate the defendant's knowledge of the presence of the contraband and the ability to control it." *Id.* Some of these recognized additional circumstances include: (1) incriminating statements made by the defendant; (2) attempted flight or furtive gestures; (3) a drug manufacturing setting; (4) proximity of the defendant to the contraband; (5) the contraband being in plain view; and (6) the location of the contraband being in close proximity to items owned by the defendant. *Id.*

[25] Here, Negash had the capability to maintain dominion and control over the handgun. The State meets this requirement when it "shows that the defendant is able to reduce the [contraband] to [the] defendant's personal possession."

*Lampkins v. State*, 682 N.E.2d 1268, 1275 (Ind. 1997), *modified on reh'g on other grounds*, 685 N.E.2d 698 (Ind. 1997). Because the handgun was in the glove compartment and easily within reach of the driver's seat, Negash was able to reduce the handgun to his personal possession. *See id*. at 1275.

[26] Although Negash did not have exclusive possession of the vehicle where the firearm was found, there were additional circumstances proving Negash's knowledge of the presence of the handgun and ability to control it. First, Negash made an incriminating statement. When Sgt. Gregory asked Officer Plummer if "someone [was] going to be arrested for the gun," Negash interjected, "I have a permit for that gun. It's in the trunk." (Tr. 27). This claim of possessing a permit for the gun suggests Negash owned the handgun. In addition, the glovebox containing the handgun was in close proximity to Negash. Together, the incriminating statement and the Negash's close proximity to the handgun demonstrate the additional circumstances required to show his knowledge of the handgun and ability to maintain dominion and control over it.

[27] Based on this evidence, we find there was sufficient evidence that Negash constructively possessed the handgun to support his conviction for carrying a handgun without a license. Negash's arguments are simply a request that we reweigh the evidence, which we cannot do. *See Drane*, 867 N.E.2d at 146.

### 3. Probation Fees

[28]     Finally, Negash challenges the trial court's decision regarding probation fees. He raises two, alternative arguments. First, Negash argues that the trial court "did not intend to impose the [probation] fees listed in the Sentencing Order." (Negash's Br. 28). Alternatively, he argues that if the trial court did impose fees, the trial court abused its discretion because it did not conduct an indigency hearing to determine if he is capable of paying the fees assessed to him.

[29]     "Sentencing decisions include decisions to impose fees and costs[,]" and "we review a trial court's sentencing decision for an abuse of discretion." *Coleman v. State*, 61 N.E.3d 390, 392 (Ind. Ct. App. 2016). An abuse of discretion occurs "when the sentencing decision is clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deduction to be drawn therefrom." *Id*. "'If the fees imposed by the trial court fall within the parameters provided by statute, we will not find an abuse of discretion.'" *Id*. (quoting *Berry v. State*, 950 N.E.2d 798, 799 (Ind. Ct. App. 2011)).

[30]     The statute governing probation provides that whenever a trial court places a person on probation, the court is required to, among other things, "specify in the record the conditions of probation[.]" IND. CODE § 35-38-2-1(a). "If the person was convicted of a *misdemeanor*, the court *may* order the person to pay the user's fee prescribed under subsection (e)." I.C. § 35-38-2-1(b) (emphasis added). Subsection (e) sets forth a list of fees, including the maximum amount for an initial probation user's fee, and the maximum and minimum amount for

a monthly probation user's fee, that the trial "court *may* order each person convicted of a misdemeanor to pay[.]"  I.C. § 35-38-2-1(e) (emphasis added).[6]

In Marion County, a local rule also provides that,

> whenever an individual is placed on probation . . . the following fees and costs shall be imposed under the Probation Court or Probation Order unless the sentencing Judge specifically modifies the Order.  The fees and costs collected under the Court or Probation Order shall be applied in this following descending order of priority:
>
>> Administrative fee
>> Probation User fee
>> . . .

Marion LR49-CR00-115(b).

First, Negash argues that the trial court "did not intend to impose" any probation fees.  (Negash's Br. 28).  Negash acknowledges that the trial court listed probation fees on the sentencing order, but he argues that because the ordered amount lines for the Probation Administrative Fee, Initial Probation User Fee, and Monthly Probation Fee on the order of probation form are blank,

---

[6] Subsection (e) of INDIANA CODE § 35-38-2-1 provides as follows:

> In addition to any other conditions of probation, the court may order each person convicted of a misdemeanor to pay:
>
>> (1) not more than a fifty dollar ($50) initial probation user's fee; (2) a monthly probation user's fee of not less than ten dollars ($10) nor more than twenty dollars ($20) for each month that the person remains on probation; (3) the costs of the laboratory test or series of tests to detect and confirm the presence of the human immunodeficiency virus (HIV) antigen and antibodies to the human immunodeficiency virus (HIV) if such tests are required by the court under section 2.3 of this chapter; and (4) administrative fee of fifty dollars ($50); to either the probation department or the clerk.

"such action shows [that] the trial court did not intend to impose the fees listed in the Sentencing Order." (Negash's Br. 28). The State responds that the trial court did order specific statutory probation fees on page two of the sentencing order: a $50.00 adult probation administrative fee; a $281.30 adult probation monthly and initial user fee; and a $8.70 probation user fee. The State contends that the "trial court did not abuse its discretion by ordering probation fees on page two of the [Marion County Sentencing] order instead of on page three." (State's Br. 2).

[33]     The "Marion County Sentencing Order" consisted of four pages. (*see* App. Vol. II 13-16). Pages one and two are made up of the sentencing order. Pages three and four are made up of the probation order. At sentencing, the trial court ordered Negash to "do those [three hundred and five] (305) days on probation with the standard conditions and fees." (Tr. 62). Additionally, the sentencing order, under the "Amount/Comment" section of "Part IV Sentencing Conditions[,]" provided, in relevant part, that: Negash would be subject to all "standard conditions and fees" of probation. (App. Vol. II at 13). Importantly, the sentencing order also included a section for monetary obligations. That section of Negash's order reads as follows:



| PART V | | MONETARY OBLIGATIONS | |
|---|---|---|---|
| **Court Costs and Fees** | | | |
| Adult Probation Administrative Fee - CR | | $50.00 | |
| Adult Probation Monthly and Initial User Fees - CR | | $281.30 | |
| Automated Record Keeping Fee - CR | | $20.00 | |
| Court Administration Fee - CR | | $5.00 | |
| Court Costs - City and Town - CR | | $3.60 | |
| Court Costs - County - CR | | $32.40 | |
| Court Costs - State - CR | | $84.00 | |
| DNA Sample Processing Fee - CR | | $3.00 | |
| Document Storage Fee - CR | | $5.00 | |
| Indianapolis Metropolitan Police | | $4.00 | |
| Judicial Insurance Adjustment Fee - CR | | $1.00 | |
| Judicial Salary Fee - CR | | $20.00 | |
| Jury Fee - CR | | $2.00 | |
| Probation User Fee - Clerk's 3% - CR | | $8.70 | |
| Public Defense Administration Fee - CR | | $5.00 | |
| | Total: | $525.00 | |

(App. Vol. II at 14). Further, the order of probation provides, in relevant part, as follows:

14. pay all Court-ordered fines, costs, fees and restitution as directed. You may request a financial assessment from your probation officer to determine your ability to pay all fees imposed by the Court (see below), and any additional fees or costs required by law.
   a) Probation Administrative Fee: Felony $100.00//Misdemeanor up to $50.00:      Ordered $: _____;
   b) Initial Probation User Fee: Felony – between $25.00 and $100.00; Misdemeanor – between $0.00 and $50.00   Ordered $: _____;
   c) Monthly Probation Fee: Felony – between $15.00 and $30.00 per month; Misdemeanor – between $10.00 and $20.00 per month:      Ordered $: _____;

**Special Conditions**

In addition to the monetary conditions, you must also pay the costs of any of the following Court-ordered programs as directed.

| | | 03/27/2018 |
|---|---|---|
| Abstract: Recommended Degree of Security - Not Applicable | | |
| Probation | 305 days. All standard conditions and fees of probation. | 03/27/2018 |
| Abstract: Recommended Degree of Security - Not | | 03/27/2018 |

**Applicable**
☐ Restitution: to:
☐ No Alcohol Consumption
☐ Restriction from Premises: _____

☐ No Contact Order: _____

☐ Additional Orders/Instructions: _____

(App. Vol. II at 15). Negash is correct that the lines to fill out the fee amounts for the Probation Administrative Fee; Initial User Fee; and Monthly Probation Fee on the order of probation within the Marion County Sentencing Order are blank. However, the special conditions section on the order of probation

includes all standard conditions and fees of probation. Based on the above, the trial court exercised its discretion and ordered probation fees.

[34] Turning to Negash's alternative argument, we agree that the trial court is required to hold an indigency hearing when imposing probation fees. *See Johnson v. State*, 27 N.E.3d 793, 795 (Ind. Ct. App. 2015) (explaining that a trial court is required to hold an indigency hearing for probation fees); *see also* I.C. § 33-37-2-3 (providing that a court must conduct an indigency hearing when imposing costs); I.C. § 35-38-1-18 (providing that a court must conduct an indigency hearing when imposing a fine). However, there is no requirement as to when the indigency hearing must be held. *See Johnson*, 27 N.E.3d at 795. In regards to probation fees, our Court has explained that "[a] trial court acts within its authority when it chooses to wait and see if a defendant can pay probation fees before it finds the defendant indigent." *Id*. *See also Whedon v. State*, 765 N.E.2d 1276, 1279 (Ind. 2002) (explaining that "a defendant's financial resources are more appropriately determined not at the time of initial sentencing but at the conclusion of incarceration, thus allowing consideration of whether the defendant may have accumulated assets through inheritance or otherwise"). "At the latest, an indigency hearing for probation fees should be held at the time a defendant completes his sentence." *Johnson*, 27 N.E.3d at 795. Therefore, because the trial court imposed probation fees, it will need to hold an indigency hearing, at the latest, at the time that Negash completes his sentence.

[35] Affirmed and remanded with instructions.

Najam, J., and Crone, J., concur.