## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

May 24 2019, 8:44 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Clifford M. Davenport
Anderson, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Tyler G. Banks
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Anthony Brockington,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

May 24, 2019

Court of Appeals Case No.
18A-CR-2422

Appeal from the Madison Circuit Court

The Honorable Thomas Newman, Jr., Judge

Trial Court Cause No.
48C04-1801-F5-81

**Robb, Judge.**

# Case Summary and Issues

[1] In June 2018, Anthony Brockington pleaded guilty but mentally ill to seven charges, the most severe of which was terroristic mischief, a Level 5 felony. He was sentenced to six years with three years executed in community corrections and three years suspended. In September of 2018, the trial court revoked Brockington's placement for having contraband and possession of a lookalike substance and ordered him to serve his six-year sentence at the Indiana Department of Correction ("DOC"). Brockington appeals the revocation, raising two issues for our review: 1) whether the evidence was sufficient to support the trial court's finding that he violated terms of his community corrections program and 2) whether the trial court abused its discretion in revoking his community corrections placement as a sanction for the violations. Concluding the State proved the violations by a preponderance of the evidence and the trial court did not abuse its discretion in imposing a sanction, we affirm.

# Facts and Procedural History

[2] On January 4, 2018, four Anderson Police Department officers responded to a call about a man at an apartment building "going crazy." Appellant's Appendix, Volume II at 13. They found Brockington on the third-floor landing outside his girlfriend's apartment. He threatened to shoot the officers and told them he had filled the apartment with gas and was going to blow the building up. Officers could smell the gas and began evacuating the building. Brockington challenged one of the officers to a fist fight and assumed a fighting

stance as an officer made his way up the stairs. When the officer reached the landing, Brockington turned and put his hands behind his back and was handcuffed and taken into custody.

[3] The State charged Brockington with one count of terroristic mischief, a Level 5 felony, for disseminating the gas; four counts of intimidation as Level 5 felonies for the threats to the officers; and one count of disorderly conduct and one count of criminal mischief, both Class B misdemeanors. Brockington filed a notice of his intent to assert the insanity defense, as he claimed to remember nothing of the incident. The parties eventually entered into a plea agreement whereby Brockington agreed to plead guilty but mentally ill to all charges and the State agreed to recommend that all sentences run concurrently and that the executed portion of the sentence be capped at three years. The trial court accepted Brockington's plea of guilty and on July 13, sentenced him to six years for terroristic mischief, one year for each count of intimidation, and 180 days each for disorderly conduct and criminal mischief. Pursuant to the plea agreement, the sentences were ordered to be served concurrently, with three years executed in the Madison County Continuum of Sanctions program and three years suspended to probation. The Continuum of Sanctions program was to decide where Brockington would serve those three years and ultimately placed him in work release.

[4] On September 24, 2018, the Continuum of Sanctions program coordinator filed a Notice of Adult Day Reporting/Continuum of Sanctions Termination request alleging Brockington violated the following program rules:

a) On 9/21/18, Mr. Brockington committed a Work Release violation of having contraband (tobacco-related) inside the facility.

b) On 9/21/18, Mr. Brockington committed the new criminal offense of Possession of a look-alike substance, an A misdemeanor.

c) As of 9/21/18, Mr. Brockington currently owes $57.62 in arrears to the Madison County Work Release Facility.

*Id.* at 76.

[5] The trial court held an evidentiary hearing on September 28, at which correctional officers Austin Russell and Jacob Roads testified. Russell had been a correctional officer for "[o]h about 3 weeks" when he was showing Roads, a new officer on his first day, around the facility dorms on September 21. Transcript, Volume I at 41. As they were approaching the dorm where Brockington was housed, they smelled smoke and then Russell noticed "another participate [sic] [who] was sitting on the wrong bunk with Mr. Brockington" cough and exhale smoke. *Id*. at 42. They then saw Brockington throw something into his locker and shut the door. They asked both participants what they had and they both responded, "[N]othing." *Id*. at 43. When the officers searched Brockington's locker, they found two bags containing a green leafy substance—one bag tied and one bag open—and also found "a rolled up substance." *Id.* Although Russell indicated he was familiar with spice and the green leafy substance looked like spice, he conceded the

substance was not tested and positively identified. Russell specifically denied seeing Brockington exhale any smoke but reiterated that he saw Brockington throw something into his locker and that participants "are not allowed to be smoking in the dorms period." *Id.* at 48. The State also admitted into evidence an affidavit of probable cause in which Officer Keith Gaskill averred that he took possession of the two bindles of green leafy substance found in Brockington's locker and "recognized the substance within to be synthetic cannabinoid, commonly referred to in street jargon as 'Spice, K2 or Katy'." Appellant's App., Vol. II at 81.

[6]     At the conclusion of the hearing, the trial court stated:

> The Court finds that the defendant violated the rules of in home um Work Release[.] . . . The Court sentences the Defendant to the Department of Corrections [sic] for 6 years.

Tr., Vol. I at 54. In its written order, the trial court elaborated:

> The court finds by preponderance of the evidence that the defendant has violated the conditions of Adult Day Reporting/Continuum of Sanctions; to wit, Defendant brought contraband and possessed a look-a-like substance.
>
> The Court makes recommendations to [DOC] that the defendant participate in Recovery While Incarcerated. Upon successful completion of the clinically appropriate substance abuse treatment program as determined by [DOC], the court will consider a modification to this sentence.

Appellant's App., Vol. II at 12. Brockington now appeals.

# Discussion and Decision

## I. Sufficiency of Evidence

[7] Brockington first argues the evidence is insufficient to show he violated the terms of his placement in the Continuum of Sanctions program. We review a decision to revoke placement in a community corrections program in the same way we review a decision to revoke probation. *Cox v. State*, 706 N.E.2d 547, 549 (Ind. 1999). "A probation hearing is civil in nature and the State need only prove the alleged violations by a preponderance of the evidence." *Id.* at 551. We will not reweigh the evidence or judge the credibility of the witnesses and will consider the evidence most favorable to the trial court's decision. *Id.* "If there is substantial evidence of probative value to support the trial court's conclusion that a defendant has violated any terms of [his placement], we will affirm its decision to revoke[.]" *Id.* The violation of a single condition of probation is enough to support revocation. *Pierce v. State*, 44 N.E.3d 752, 755 (Ind. Ct. App. 2015).

[8] Brockington argues that the State failed to prove he had violated the conditions of his placement. He focuses on the fact that he was not seen smoking and that the substance found in his locker was never tested or positively identified. We agree the State's evidence could have been presented more artfully and in more detail. However, the State only had to prove a violation by a preponderance of the evidence. *See* Ind. Code § 35-38-2-3(f). "Preponderance of the evidence" "simply means the greater weight of the evidence." *Kishpaugh v. Odegard*, 17

N.E.3d 363, 373 (Ind. Ct. App. 2014) (quotation omitted). And the State's evidence meets that standard.

[9] Brockington was alleged to have possessed tobacco-related contraband in the work release facility. Although tobacco is not illegal and therefore not inherently "contraband," in the context of the Continuum of Sanctions program, tobacco or tobacco-related products would be considered contraband as they are not allowed to be used in the facility. Brockington was not alleged to have been smoking but only to have the means to do so, and both the green leafy substance and the rolled object were found in his locker. Moreover, officers saw Brockington throw something into his locker as they approached, and one of the bags of the green leafy substance was found "right inside the locker where . . . it looked like he would have thrown in there as soon as [officers] walked up." Tr., Vol. I at 43. And although the substance inside the rolled object was not identified, the object was rolled up like a joint – in other words, in a manner to facilitate smoking.

[10] As for the allegation that Brockington committed a new criminal offense by possessing a lookalike substance, it is a Class A misdemeanor to knowingly or intentionally possess a synthetic drug lookalike substance. Ind. Code § 35-48-4-11.5(c). A synthetic drug lookalike substance is defined as a "substance, other than a synthetic drug, which any of the factors listed in subsection (c) would lead a reasonable person to believe to be a synthetic drug." Ind. Code § 35-31.5-2-321.5(a)(1). The factors listed in section 35-31.5-2-321.5(c) include the "overall appearance of a dosage unit of the substance, including its shape, color,

size, markings or lack of markings, taste, consistency, and any other identifying physical characteristics." Ind. Code § 35-31.5-2-321.5(c)(1). The testimony at the hearing was that there was a rolled object and two bags of the green leafy substance in Brockington's locker. It is true the green leafy substance was never definitively identified, but there was evidence in the form of Russell's testimony and Gaskill's affidavit[1] that they recognized the green leafy substance to be consistent with the appearance of spice. "Although chemical analysis is one way, and perhaps the best way, to establish the identity of a compound," "[t]he opinion of someone sufficiently experienced with the drug may establish its identity, as may other circumstantial evidence." *Vasquez v. State*, 741 N.E.2d 1214, 1216 (Ind. 2001). As for Brockington's possession of the substance, officers did not find it in his actual possession, but they saw him throw something into his locker and later found two bags of the substance in his locker. Constructive possession can be proved by evidence that the person has both the capability and the intent to maintain dominion and control of the contraband. *Sargent v. State*, 27 N.E.3d 729, 733 (Ind. 2015). The locker was apparently in close enough proximity to Brockington that he was able to easily throw into it whatever was in his hand. Moreover, the green leafy substance

---

[1] Brockington did not object to the admission of this probable cause affidavit "without making any admission as to the allegation that may[]be derived" from it. Tr., Vol. I at 52. On appeal, Brockington argues the affidavit should not have been admitted, acknowledges counsel's statement was "perhaps ambiguous," and contends that even if error in its admission is deemed waived, it constituted fundamental error. Appellant's Brief at 17. As any error was invited, it cannot be fundamental. *See Brewington v. State*, 7 N.E.3d 946, 975 (Ind. 2014). Regardless, the hearsay rule is not applicable in revocation proceedings and the trial court may consider all relevant evidence, including reliable hearsay. *Cox*, 706 N.E.2d at 552.

was found in Brockington's locker among his other things and his throwing the item was an attempt to hide it. *See Negash v. State*, 113 N.E.3d 1281, 1291 (Ind. Ct. App. 2018) (pointing out that some of the circumstances indicating a defendant knew of the contraband and was capable of controlling it are furtive gestures, proximity to the contraband, and the contraband being in close proximity to items owned by the defendant). Recognizing that the standard of proving Brockington violated his placement by committing a new criminal offense is a preponderance of the evidence, not beyond a reasonable doubt, we conclude the State met its burden of proving Brockington possessed a synthetic lookalike substance.

[11] In sum, the allegations in the notice were proved by a preponderance of the evidence and the trial court did not err in determining Brockington had committed a violation of the terms of his placement as alleged by the program coordinator.

## II. Sanction

[12] Brockington's argument regarding the sanction imposed by the trial court is primarily grounded in seeking a revision of the sanction pursuant to Appellate Rule 7(B) because the trial court's initial sentence gave "great consideration" to his mental health and the sanction "wholly fails to address Brockington's mental health and the need for him to continue treatment[.]" Appellant's Brief at 8, 23. However, Appellate Rule 7(B) does not apply to sanctions imposed in

a probation revocation proceeding. *Prewitt v. State*, 878 N.E.2d 184, 188 (Ind. 2007).

[13] Instead, we review the sanction the trial court imposes in a revocation proceeding for an abuse of discretion. *Puckett v. State*, 956 N.E.2d 1182, 1186 (Ind. Ct. App. 2011). An abuse of discretion will only be found if the trial court's decision is against the logic and effect of the facts and circumstances before it. *Id.* Both community corrections programs and probation serve as alternatives to commitment to the DOC and are ordered at the sole discretion of the trial court. *Cox*, 706 N.E.2d at 549. Placement in either program is a matter of grace and a conditional liberty that is a favor, not a right. *Id.* "Once a trial court has exercised its grace by ordering probation rather than incarceration, the judge should have considerable leeway in deciding how to proceed." *Prewitt*, 878 N.E.2d at 188. When reviewing revocation of probation, we look only at the sentence imposed after revocation and not the terms of the initial sentence. *Johnson v. State*, 62 N.E.3d 1224, 1230 (Ind. Ct. App. 2016). After a hearing and upon finding that a violation occurred, the trial court may revoke the defendant's placement in community corrections and order all or part of the previously suspended sentence to be executed. Ind. Code § 35-38-2-3(h)(3).

[14] Here, within two months of being given the grace of serving his sentence in the Continuum of Sanctions program, Brockington violated the terms of that program. The trial court initially showed Brockington leniency but Brockington did not rise to the opportunity, instead violating the terms of his placement almost immediately. The trial court did not ignore Brockington's

issues in committing him to the DOC, but rather, recommended to the DOC that he participate in Recovery While Incarcerated and indicated its willingness to consider a modification to his sentence in the future. Under these circumstances, we cannot say the trial court abused its discretion in imposing a sanction.

# Conclusion

[15] The State met its burden of proving by a preponderance of the evidence that Brockington had violated the terms of his community corrections placement and the trial court did not abuse its discretion in imposing a sanction for the violations. Accordingly, the judgment of the trial court is affirmed.

[16] Affirmed.

Baker, J., and Najam, J., concur.