## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Apr 13 2020, 9:09 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

James A. Hanson
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Ian McLean
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

James E. Starks, III,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

April 13, 2020

Court of Appeals Case No.
19A-CR-1175

Appeal from the
Allen Superior Court

The Honorable
David M. Zent, Judge

Trial Court Cause No.
02D06-1902-F5-34

**Kirsch, Judge.**

[1] James E. Starks, III ("Starks") was convicted after a bifurcated jury trial of carrying a handgun without a license[1] as a Level 5 felony. He was sentenced to four years in the Indiana Department of Correction ("the DOC"). Starks appeals and raises the following restated issues for our review:

> I. Whether the trial court abused its discretion in admitting into evidence a handgun found during a search of the vehicle Starks was driving;

> II. Whether the State presented sufficient evidence to support Starks's conviction; and

> III. Whether Starks's sentence is inappropriate in light of the nature of the offense and the character of the offender.

[2] We affirm.

## Facts and Procedural History

[3] On February 3, 2019, at approximately 8:50 p.m., Fort Wayne Police Department ("FWPD") Detective David Wilkins ("Detective Wilkins") was on patrol in an unmarked police vehicle and full uniform when he saw a white Pontiac Grand Prix turn without activating its turn signal within 200 feet of the intersection. *Trial Tr.* at 85-86, 100. Detective Wilkins testified that the vehicle

---

[1] *See* Ind. Code § 35-47-2-1(a), (e)(2)(A).

"was almost stopped before initiating a turn signal to go eastbound onto Colerick [Street]." *Id.* at 86.

[4] Detective Wilkins activated his emergency lights to signal the Grand Prix to stop. *Id.* FWPD Detective Christopher Hawthorne ("Detective Hawthorne"), who was following Detective Wilkins's vehicle, activated his emergency lights as well. *Id.* at 146. Detective Hawthorne also sounded his siren "just to try to catch the attention of the driver of the [Grand Prix]." *Id.* The Grand Prix slowed down but did not stop. *Id.* Both detectives sounded their respective sirens to get the driver's attention. *Id.* at 87. Once the emergency lights had been activated, it took the driver of the Grand Prix approximately ten seconds to bring the vehicle to a stop. *Id.* at 88.

[5] Once the vehicle had stopped, but before Detective Wilkins could fully exit his vehicle, the driver of the Grand Prix put his hands out of the driver-side window so that they were in clear view of the detectives. *Id.* Detective Wilkins thought that this was an unusual gesture and an indication that a weapon might be inside of the vehicle. *Id.* at 89.

[6] Detective Hawthorne exited his vehicle and approached the passenger-side of the Grand Prix. *Id.* at 146. Detective Wilkins approached the driver-side of the vehicle. *Id.* at 89. As he did so, he noticed that the rear passenger windows were so darkly tinted that he could not see into the vehicle, and he smelled the

odor of raw marijuana. *Id.* Detective Wilkins recognized the driver as Starks,[2] and he told Starks to lower all the Grand Prix's windows. *Id.* at 90-91. Starks was alone in the vehicle, and he appeared to be "very nervous." *Id.* at 90, 149.

[7] When Starks lowered the windows, Detective Hawthorne saw a handgun magazine in a cup holder in the center console of the vehicle. *Id.* at 146-47. Detective Hawthorne then asked Starks if there were any weapons in the vehicle, and Starks replied, "I'll be honest with you, I don't have a gun. It's my mom's car." *Id.* at 91. Detective Wilkins ordered Starks to exit the vehicle, and Starks complied. *Id.* Detective Wilkins then performed a pat-down search for the purpose of officer safety. *Id.* at 92. Detective Wilkins noticed that, even though the temperature was about forty-nine degrees at the time of the traffic stop, Starks's hands were trembling. *Id.* Detective Hawthorne observed that Starks kept glancing into the Grand Prix's interior. *Id.* at 149. Starks told the detectives that he did not have a valid driver's license and that, prior to the traffic stop, he had smoked a blunt – a hollowed-out cigar containing marijuana. *Id.* at 147, 150.

[8] While Detectives Wilkins and Hawthorne were establishing initial contact with Starks, FWPD Detective Shannon Hughes ("Detective Hughes") arrived at the scene. *Id.* at 122. As she approached the Grand Prix, she smelled the odor of

---

[2] It is unclear from the record whether Detective Wilkins knew Starks from past encounters.

marijuana emanating from the vehicle, and when she glanced into the vehicle, she saw the handgun magazine in the cup holder. *Id.* at 122-23.

[9] Detectives Wilkins and Hughes searched the vehicle. *Id.* at 92. In addition to the loaded handgun magazine observed in the cup holder – which contained twelve rounds of ammunition – they found small amounts of marijuana on the front passenger seat belt. *Id.* at 93-94. In the glove box, Detective Wilkins found a 9mm caliber, semi-automatic handgun with another loaded magazine inserted into its grip. *Id.* at 98. Unlike the twelve-round magazine found in the cup holder, which was later determined to be the standard magazine for the handgun, the loaded magazine that was inserted into the handgun was extended and held eighteen rounds. *Id.* at 98, 125, 137.

[10] While Detectives Wilkins and Hughes were searching the vehicle, Starks's mother, Tracy Brown ("Brown"), arrived at the scene in response to a phone call made to her by Detective Hawthorne. *Id.* at 112, 135. Brown showed the detectives her concealed-carry license that she kept behind the sun visor in the Grand Prix. *Id.* The detectives confirmed that she owned the Grand Prix. *Id.* at 111. Brown told the detectives that she owned the 9mm handgun and the twelve-round magazine, but that she did not own the extended magazine found inside the handgun in the glove box. *Id.* at 137. She also stated that she would place her handgun in the glove box when she was using her vehicle. *Id.* at 136. Brown also noted that she sometimes forgot to retrieve her handgun from the glove box when leaving the vehicle. *Id.* Brown told the detectives that Starks did not have permission to drive her vehicle. *Id.* When she testified at Starks's

trial, however, she stated that her initial statement to the detectives was incorrect and that, in actuality, Starks could "drive [her vehicle] anytime he wants to[.]" *Id.*

[11] On February 7, 2019, the State charged Starks with possession of marijuana, a Class A misdemeanor, carrying a handgun without a license, a Class A misdemeanor, and an information enhancing the offense to a Level 5 felony by virtue of a prior conviction. *Appellant's App. Vol. II* at 2-4, 6. Starks was tried to a jury in a bifurcated trial on April 18, 2019. *Trial Tr.* at 2. During the first phase of the trial, the State offered into evidence Exhibits 4 and 5 – photographs of the 9mm caliber handgun found in the Grand Prix's glove box. *Id.* at 94-95. Starks's counsel stated that he had "[n]o objection" to their admission into evidence. *Id.* at 95. The State also offered Exhibit 7 – the handgun itself and the two magazines found in the Grand Prix. *Id.* at 124. Starks's counsel stated that he had no objection to the admission of the exhibit into evidence. *Id.* at 125.

[12] Starks was found guilty of carrying a handgun without a license as a Class A misdemeanor but not guilty of possession of marijuana. *Id.* at 193-195; *Appellant's App. Vol. II* at 122-24. In the second phase of the trial, the jury found that because Starks had a prior conviction for carrying a handgun without a license, his misdemeanor should be enhanced to a Level 5 felony. *Trial Tr.* at 195, 200; *Appellant's App. Vol. II* at 122-24.

[13]     Starks was sentenced on May 14, 2019. *Sent. Tr.* at 2; *Appellant's App. Vol. II* at 181. The trial court entered a judgment of conviction for Level 5 felony carrying a handgun without a license and sentenced Starks to four years executed in the DOC. *Sent. Tr.* at 9-10; *Appellant's App. Vol. II* at 181, 183. Starks now appeals.

# Discussion and Decision

## I. Admission of Evidence

[14]     Starks claims that Detective Wilkins had no basis to initiate a traffic stop and that the warrantless search of the vehicle he was driving, and the subsequent seizure of the handgun found in the glove box, violated his rights under both the Fourth Amendment to the United States Constitution and Article I, Section 11 of the Indiana Constitution. We note, however, that Starks did not file a pretrial motion to suppress evidence, and he appeals following his conviction and sentence. As such, his argument is more properly framed as whether the trial court abused its discretion in admitting into evidence the handgun obtained as a result of the challenged search. *Hirshey v. State*, 852 N.E.2d 1008, 1012 (Ind. Ct. App. 2006), *trans. denied*. Our standard of review of rulings on the admissibility of evidence is essentially the same whether the challenge is made by a pretrial motion to suppress or by trial objection: we do not reweigh the evidence, and we consider conflicting evidence most favorable to the trial court's ruling. *Id.*

[15]     Here, however, the record reveals that Starks failed to object to testimony regarding the loaded handgun found in the glove box or to the admission of the handgun into evidence. For example, when Detective Hughes testified that "Detective Wilkins . . . advised [her] that he observed a handgun, a loaded handgun in the glove box of the vehicle," and that she secured the handgun as evidence, Starks's counsel did not object to the testimony. *Trial Tr.* at 123. When the State introduced the handgun into evidence, Starks's counsel stated he had "[n]o objection." *Id.* at 124-25.

[16]     By failing to object to the admission of the handgun, Starks failed to preserve his challenge to its admissibility. *See Brown v. State*, 929 N.E.2d 204, 206-07 (Ind. 2010). "A contemporaneous objection at the time the evidence is introduced at trial is required to preserve the issue for appeal, whether or not the appellant has filed a pretrial motion to suppress." *Id.* at 207. "The purpose of this rule is to allow the trial judge to consider the issue in light of any fresh developments and also to correct any errors." *Id.*

[17]     Nevertheless, a claim that has been waived by a defendant's failure to raise a contemporaneous objection can be reviewed on appeal if the reviewing court determines that a fundamental error occurred. *Id.*

> The fundamental error exception is "extremely narrow, and applies only when the error constitutes a blatant violation of basic principles, the harm or potential for harm is substantial, and the resulting error denies the defendant fundamental due process." The error claimed must either "make a fair trial impossible" or constitute "clearly blatant violations of basic and

> elementary principles of due process." This exception is
> available only in "egregious circumstances."

*Id.* (internal citations omitted). An error in ruling on a motion to exclude improperly seized evidence, however, is not per se fundamental error. *Id.* "Indeed, because improperly seized evidence is frequently highly relevant, its admission ordinarily does not cause us to question guilt." *Id.*

[18] In *Brown,* the Indiana Supreme Court found that Brown's claimed error regarding the admission of evidence did not rise to the level of fundamental error where there was no claim of "fabrication of evidence"; "willful malfeasance on the part of the investigating officers"; or "that the evidence is not what it appears to be." *Id.* Our Supreme Court held that where a defendant makes no contention "that he did not receive a fair trial, other than his assertion that the evidence was the product of an unconstitutional search and seizure[,]" fundamental error will not be found. *See id.* at 208 (finding no fundamental error where Brown failed to contend that he received an unfair trial based on grounds other than the admission of evidence).

[19] In this case, Starks failed to object to the admission of the handgun at trial, does not assert fundamental error on appeal, and fails to raise any grounds to support a finding of fundamental error. Accordingly, we decline to review his challenge to the admissibility of the handgun.

## II. Sufficiency of the Evidence

[20] Next, Starks challenges the sufficiency of the evidence as to his possession of the handgun. His argument is that there was a "complete lack of evidentiary support connecting [him] to the handgun or the extended magazine[.]" *Appellant's Br.* at 25.

[21] It is well-established that when we review the sufficiency of the evidence to support a conviction, we consider only the probative evidence and reasonable inferences supporting the verdict. *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007). It is not our role as an appellate court to assess witness credibility or to weigh the evidence. *Id.* We will affirm the conviction unless no reasonable factfinder could find the elements of the crime proven beyond a reasonable doubt. *Id.*

[22] The carrying a handgun without a license statute provides, in relevant part, that "a person shall not carry a handgun in any vehicle or on or about the person's body without being licensed under this chapter to carry a handgun." Ind. Code § 35-47-2-1(a). To convict Starks of Level 5 felony carrying a handgun without a license, the State was required to prove beyond a reasonable doubt that he knowingly or intentionally carried a handgun in any vehicle or on or about his body without being licensed, and that he had been previously convicted of carrying a handgun without a license. Ind. Code § 35-47-2-1(e)(2)(A)(i).

[23] Possession of a firearm or other contraband may be either actual or constructive. *Henderson v. State*, 715 N.E.2d 833, 835 (Ind. 1999). Actual

possession occurs when a defendant has direct physical control over the item. *Id.* Constructive possession occurs when the defendant has the capability to maintain dominion and control over the item, and he intends to maintain dominion and control over it. *Negash v. State*, 113 N.E.3d 1281, 1291 (Ind. Ct. App. 2018). Starks did not have direct physical control over the handgun found in his mother's car. Thus, the question is whether he constructively possessed it.

[24] Where a defendant has exclusive possession of the premises where the item was found, an inference arises that he knew of the presence of the item and was capable of controlling it. *Id.* However, if possession of the premises is not exclusive, the inference arises only if additional circumstances indicate the defendant's knowledge of the item and the ability to control it. *Id.* Examples of these additional circumstances include incriminating statements by the defendant, attempted flight or furtive gestures, a drug manufacturing setting, proximity of the defendant to the item, whether the item is in plain view, and other items belonging to the defendant in close proximity to the item. *Id.* These are merely examples of additional circumstances that may show constructive possession. *Cannon v. State*, 99 N.E.3d 274, 279-80 (Ind. Ct. App. 2018), *trans. denied.* Other circumstances may just as reasonably demonstrate the requisite knowledge and intent. *Id.*

[25] Here, the evidence showed that Starks was driving the Grand Prix with a loaded twelve-round magazine, in plain view, next to him in a cup holder. When Detective Wilkins activated his emergency lights to initiate the traffic

stop, Starks did not stop his vehicle immediately but instead slowly came to a stop. *Trial Tr.* at 146. Detective Wilkins testified that when an individual fails to pull over immediately, it "heightens my awareness . . . that they're secreting a weapon, or they're retrieving a weapon." *Id.* at 88. When Starks pulled his vehicle to the side of the road, Starks immediately put his hands outside of the driver's-side window. Detective Wilkins testified that this was an unusual gesture that led him to believe that there was a weapon in the vehicle. *Id.* at 89. He further testified that Starks exhibited a higher degree of nervousness than the detective usually encountered during traffic stops. *Id.* at 90.

[26] When Detective Hawthorne asked Starks if he had a weapon, Starks did not tell the detective that there was a handgun in the glove box. Instead, he stated, "I'll be honest with you, I don't have a gun. It's my mom's car." *Id.* at 91. After Starks was removed from the vehicle, Starks continued to glance at the vehicle's interior. *Id.* at 149. Detective Hawthorne testified that "[i]t's common for individuals that have illegal contraband . . . to look towards it to see if it's visible [to] law enforcement . . . ." *Id.* at 149-50.

[27] The handgun that was found by the detectives in the glove box of the Grand Prix was loaded with an extended magazine that held eighteen rounds of ammunition. The standard twelve-round magazine had been removed from the handgun. While Starks's mother, Brown, testified that the handgun and the twelve-round magazine belonged to her, she stated that the extended magazine was not hers and that she did not place the extended magazine into the handgun. *Id.* at 137-38. She also testified that Starks knew that she kept the

gun in her vehicle. *Id.* at 138. Detective Wilkins testified that, at the time of the traffic stop, the handgun had been placed in the glove box at an angle, which was odd because, according to Detective Wilkins, "any movement from [the vehicle] . . . would have that gun evening up and the barrel would [lay] flat against that surface in the glove box." *Id.* at 97.

[28] Based upon the foregoing, we conclude that the evidence presented by the State permitted the jury to conclude beyond a reasonable doubt that Starks knew the handgun was in the vehicle he was driving and that he had the ability and intent to control it. The State established that Starks constructively possessed the handgun. We find the evidence sufficient to support Starks's conviction.

## III. Inappropriate Sentence

[29] Starks next asserts that his sentence is inappropriate. Pursuant to Indiana Appellate Rule 7(B), this court "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the [c]ourt finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Our Supreme Court has explained that the principal role of appellate review should be to attempt to leaven the outliers, "not to achieve a perceived 'correct' result in each case." *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008). We independently examine the nature of Stark's offense and his character under Appellate Rule 7(B) with substantial deference to the trial court's sentence. *Satterfield v. State*, 33 N.E.3d 344, 355 (Ind. 2015). "In conducting our review, we do not look to see whether the defendant's sentence

is appropriate or if another sentence might be more appropriate; rather, the test is whether the sentence is 'inappropriate.'" *Barker v. State*, 994 N.E.2d 306, 315 (Ind. Ct. App. 2013), *trans. denied*. Whether a sentence is inappropriate ultimately depends upon "the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." *Cardwell*, 895 N.E.2d at 1224. Starks bears the burden of persuading us that his sentence is inappropriate. *Id*.

[30] "As to the nature of the offense, the advisory sentence is the starting point the legislature has selected as an appropriate sentence for the crime committed." *Kunberger v. State*, 46 N.E.3d 966, 973 (Ind. Ct. App. 2015). Here, Starks was convicted of Level 5 felony carrying a handgun without a license. A person who commits a Level 5 felony shall be imprisoned for a fixed term of between one and six years, with the advisory sentence being three years. Ind. Code § 35-50-2-6(b). Therefore, the maximum sentence Starks could have received from the trial court was six years. The trial court imposed a sentence of four years. Thus, Starks's executed sentence was two years less than the maximum he could have received.

[31] As this court has recognized, the nature of the offense is found in the details and circumstances of the commission of the offense and the defendant's participation. *Perry v. State*, 78 N.E.3d 1, 13 (Ind. Ct. App. 2017). The nature of the offense refers to a defendant's actions in comparison with the elements of the offense. *Cardwell*, 895 N.E.2d at 1224. When determining the appropriateness of a sentence that deviates from an advisory sentence, "we

consider whether there is anything more or less egregious about the offense as committed by the defendant that 'makes it different from the typical offense accounted for by the legislature when it set the advisory sentence.'" *Moyer v. State*, 83 N.E.3d 136, 142 (Ind. Ct. App. 2017) (quoting *Holloway v. State*, 950 N.E.2d 803, 807 (Ind. Ct. App. 2011)), *trans. denied*.

[32]     Starks maintains that his sentence is inappropriate in light of the nature of the offense because the "firearm was never utilized by [him] or otherwise employed to threaten the safety of any particular individual or the community." *Appellant's Br.* at 26.   While the nature of Starks's offense was not particularly egregious, we would not characterize his offense as minor.   Starks was driving with a suspended license.   *Trial Tr.* at 156.   When the detective asked Starks if there were any weapons in the vehicle, Starks did not disclose that he had a handgun in the glove box, but instead replied, "I'll be honest with you, I don't have a gun.   It's my mom's car."   *Id.* at 91.   While Starks's offense may not be particularly egregious, it is Starks's character that convinces us that his four-year sentence is appropriate.

[33]     The character of the offender is found in what we learn of the offender's life and conduct.   *Perry*, 78 N.E.3d at 13.   When considering the character of the offender, one relevant fact is the defendant's criminal history.   *Johnson v. State*, 986 N.E.2d 852, 857 (Ind. Ct. App. 2013).   Starks's juvenile history began when he was fifteen years old and includes charges of leaving home without permission, false informing, and interfering with a drug or alcohol screening test.   *Appellant's Conf. App. Vol. II* at 172.   His adult criminal history includes

nine misdemeanor convictions. Between 2013 and the present, he was convicted of disorderly conduct as a Class B misdemeanor; battery as a Class A misdemeanor; false informing as a Class B misdemeanor; knowingly or intentionally operating a motor vehicle without ever receiving a license as a Class C misdemeanor; carrying a handgun without a license as a Class A misdemeanor;[3] resisting law enforcement, as a Class A misdemeanor; and possession of marijuana, once as a Class B misdemeanor and twice as a Class A misdemeanor. *Id.* at 173-74. In four of his previous cases, his suspended sentence was revoked, and in one case in which he was placed on probation, his probation was revoked. *Id.* at 177.

[34]    Starks's criminal history shows that prior punishments and leniency have not deterred him from committing further similar crimes, which shows poor character. Additionally, at sentencing, the trial court noted that Starks did not plead guilty and did not accept responsibility or express remorse for his crime. *Sent. Tr.* at 10. As such, we conclude that Starks's sentence is not inappropriate in light of his character.

---

[3] The trial court incorrectly determined at sentencing that it could not consider Starks's prior conviction for carrying a handgun without a license because it was an element of his present crime. *See, e.g., Pedraza v. State*, 887 N.E.2d 77, 80 (Ind. 2018) (when a trial court uses the same criminal history as an aggravator and as support for an habitual offender finding, it does not constitute impermissible double enhancement of the offender's sentence).

[35] Starks has not shown that his sentence is inappropriate in light of the nature of the offense and the character of the offender. We, therefore, affirm the four-year sentence imposed by the trial court.

[36] Affirmed.

Bailey, J., and Mathias, J., concur.